# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CARL E. SANDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08 C 1660 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Carl Sanders has filed suit under the Federal Tort Claims Act (FTCA) against the United States Department of Housing and Urban Development, HUD Secretary Alfonzo Jackson, and two HUD employees, Veronica Coleman and Kenneth R. Donohue, for tortious interference with employment relationships. Sanders seeks compensatory damages for lost wages and expenses, along with punitive damages. The government has moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or in the alternative for summary judgment.

The Court takes the following facts from the allegations in Sanders' second amended complaint. Sanders, a property manager with experience in HUD housing developments, worked for PM One Limited Management Company. In 1998 Sanders began managing South Pointe Tower, a PM One property consisting entirely of Section 8 subsidized housing. A dispute arose in 2000 between Englewood Terrace Limited Partnership, South Pointe Tower's owner, and HUD over the validity of a Housing

Assistance Payment contract. During the dispute, Veronica Coleman, the HUD Director of Management, concluded that Sanders mismanaged the property. Coleman never visited South Pointe Tower, and her opinion was based on reports by her staff. That dispute eventually led to a lawsuit. Later, in 2007, the United States Court of Federal Claims found HUD liable for breach of contract.

In October 2003 Mercy Housing, Inc. hired Sanders as area supervisor of its Chicago properties. A month later, during a meeting between Mercy and HUD, Coleman stated that Sanders had "messed up" the PM One portfolio and that Mercy was making a mistake in hiring him. 2nd Am. Compl. ¶ 24. Sanders alleges that Mercy had additional contact with Coleman during which Coleman made other untrue statements about him. Mercy subsequently terminated Sanders' $85,000 employment contract.

Sanders sought employment with American Apartment Management Company in 2005. However, during its reference check of Sanders' experience, American received a negative review from Coleman. American did not hire Sanders.

Sanders sent a letter to HUD Inspector General, Kenneth Donohue in August 2005. The letter stated that Coleman was "Illegally, Maliciously, Defaming my Character and Blackballing [Sanders] in the Industry." *Id.*, Ex. A. The letter also laid out the sequence of events, including Sanders' lost work opportunities. It concluded by asserting that "Coleman/HUD should be liable for **slandering my name, defaming my character and blackballing me in the industry**." *Id.* (emphasis in original). Sanders sent a second letter to HUD in February 2007 enclosing the original 2005 letter, stating

that he had been "severely damaged by HUD," and asking for a response in 30 days. *Id.*, Ex. B. Sanders likewise sent letter to his congressional representatives. HUD finally sent a response to Sanders in 2007. That response came from the Program Integrity Division; it stated that the issues Sanders raised did not come under the jurisdiction of the Inspector General and that his claims had been referred to the appropriate division. Sanders sent a third letter to HUD in 2008, asking Donohue to institute "a renewed and more careful/serious investigation of my claims." *Id.*, Ex. C. He received no response.

On March 21, 2008, Sanders filed suit against HUD, Coleman, Donohue and HUD Secretary Alfonzo Jackson for tortious interference with employment relationships. He later filed an amended complaint, naming only the United States as a defendant. Sanders' second amended complaint identifies HUD, Coleman, Donohue, and Jackson in the caption but seeks relief only against the United States.[1]

The government has moved to dismiss the case for lack of subject matter jurisdiction or in the alternative, for summary judgment. As part of that motion, the Attorney General filed a certification that all three employees were acting within the scope of their employment" at the time of the incidents out of which the claims arose." Def. Mot., Ex. A.

**1.    Administrative claim**

The government first asserts that Sanders has not met the jurisdictional

---

[1] As an initial matter, only the United States may be sued under the FTCA, not individual agencies. 28 U.S.C. §2679. Thus, HUD may not be sued; the United States is the only entity properly named as a defendant.

prerequisites to a suit under the FTCA because he failed to first file an administrative claim with HUD. Sanders counters that he sent three letters to HUD between August 30, 2005 and March 7, 2008 detailing his complaints; he contends that these letters constitute a claim under the statute.

The FTCA provides that a tort action against the United States can proceed only if the claimant has first presented the claim to the appropriate administrative agency and the agency has finally denied the claim. 28 U.S.C. § 2675(a). The administrative claim must be filed within two years after the claim accrues, or a suit under the FTCA is "forever barred." *Id.* § 2401(b). The agency's failure to resolve the claim within six month is treated as a final denial. *Id.* § 2675(a)*.* A plaintiff's failure to exhaust administrative remedies in an FTCA case divests a court of jurisdiction over the action. *McNeil v. United States*, 508 U.S. 106, 111-13 (1993); *Murrey v. United States*, 73 F.3d 1448, 1451 (7th Cir. 1996).

The Seventh Circuit has held that 28 C.F.R. § 14.2(a) controls the requirements of an FTCA administrative claim. *United States v. Kanar*, 118 F.3d 527, 528 (7th Cir. 1997). That regulation states that "a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2(a).

The government notes that Sanders failed to submit a Standard Form 95, but that point by itself does not carry the day. Although section 14.2(a) states that the filing of a properly executed Standard Form 95 is sufficient to present a claim, that is not the only way to satisfy the statutory requirement of presenting a claim to the relevant

4

agency. The regulation says that any "other written notification of the incident accompanied by a claim for money damages in a sum certain" will suffice. *Id.*

Because Sanders' 2005 letter clearly sets out a description of the incidents that form the basis of his claim—his contention that Ms. Coleman and other HUD employees were preventing him from getting and keeping a job—the issue is whether the letters satisfy the requirement of a demand for money damages in a sum certain. None of Sanders' letters to HUD assert any demand for damages. In fact, the letters do not mention any dollar amount at all. As a result, the letters cannot constitute a "claim" under section 2675. *See Kanar*, 118 F.3d at 531 (holding that the absence of one of the elements of section 14.2(a) meant that the claimant failed to present and administrative claim and was thus barred from recovery under the FTCA).

The Seventh Circuit has indicated that some of the requirements of section 14.2(a) are not entirely inflexible. *See Kanar*, 118 F.3d at 530-531 (discussing the possibility of equitable tolling for administrative claims). Nevertheless, the "sum certain" requirement is mandated even by circuits that have not expressly relied upon section 14.2(a). *See Manko v. United States*, 830 F.2d 831, 840 (8th Cir. 1987); *GAF Corp. v. United States*, 818 F.2d 901, 919-20 (D.C. Cir. 1987); *Adams v. United States*, 615 F.2d 284, 289 (5th Cir. 1980). *Cf. Murrey*, 73 F.3d at 1451 (stating, in *dictum*, that "[t]he tort claimant is required to demand money damages in a 'sum certain,'" citing 28 C.F.R. § 14.2(a) and *Manko*). This facilitates the exhaustion requirement's purpose of providing the government with sufficient notice to investigate the claim and prepare for settlement negotiations. *See Charlton v. United States*, 743 F.2d 557, 559-60 (7th Cir.

5

1984).  *Kanar* has been interpreted within this district to mean that failure to include a sum certain in an administrative claim warrants dismissal of the suit for failure to exhaust administrative remedies.  *Chritides v. Zuckerman*, No. 03 C 6319, 2004 WL 1005750, *5 (N.D. Ill. May 4, 2004); *Laughlin v. Comm'r of Patents and Trademarks*, No. 98 C 535, 1999 WL 203286, *3 (N.D. Ill. Mar. 31, 1999).  Sanders' suit must therefore be dismissed because each of his letters failed to include any amount of claimed money damages.

**2.     Intentional torts exception**

The government's second contention is that the basis of Sanders' claim falls within the intentional torts exception and is barred.  The FTCA sets out several exceptions to its general waiver of sovereign immunity for tort actions.  The exception at issue states that the districts courts shall not have jurisdiction to hear "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  28 U.S.C. § 2680(h).  Sanders' complaint alleges interference with existing and prospective contractual relations, but he has made out a claim amounting to negligent misrepresentation in his briefs.

Courts have construed this provision strictly.  Section 2680(h) covers the tort of misrepresentation, whether negligent or intentional.  *United States v. Neustadt*, 366 U.S. 696, 702 (1961).  The provision also bars recovery for claims of interference with contract rights.  *Hamrick v. Franklin*, 931 F.2d 1209, 1212 (7th Cir. 1991).  Sanders argues that the misrepresentations made by HUD employees resulted from Coleman's

6

carelessness in dealing with South Pointe Tower. Sanders' injury does not arise, however, from that carelessness; it arises from the communications made by HUD employees to Sanders' employer and prospective employers. *See Neustadt*, 366 U.S. at 704-08 (rejecting the argument that the misrepresentation contained in a faulty appraisal was "merely incidental" to the negligent home inspection and that the claim fell outside § 2680(h)). As a result, his misrepresentation claim, like his interference with contract claim, falls squarely within the statutory exception; both are barred.

**3.    Individual capacity claims**

In an effort to avoid dismissal of his case, Sanders has indicated that he should be able to assert claims against Coleman, and perhaps others, as individuals; he challenges the government's certification that they were acting with the scope of their employment. The government argues that Sanders cannot sue the individuals.

Sanders may not sue individual agency officers or employees in this case. The remedy provided by the FTCA for actions by a government employee acting withing the scope of employment "is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim." *Id.* § 2679(b)(1). A plaintiff can assert a claim against a federal officer individually for violating the plaintiff's federal constitutional rights, *see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 394-95 (1971), a claim that is distinct from a claim under the FTCA, *see Carlson v. Green*, 446 U.S. 14, 19-20 (1980), but Sanders has alleged nothing that arguably could give rise to a claim for violation of his constitutional rights.

7

Once the Attorney General has certified that the employee was acting within the scope of his employment, the United States is substituted as the party defendant. *Id.* § 2679(d). The government has produced the Attorney General's certification that Jackson, Coleman, and Donohue were acting within the scope of their employment. Def. Mot., Ex. A. Though that certification is subject to *de novo* review if challenged, the plaintiff bears the burden of showing that the employee was acting outside the scope of employment. *Hamrick*, 931 F.2d at 1211.

Sanders contends that the HUD employees could not possibly have been acting within the scope of their employment because they carelessly damaged his reputation in the industry. That argument misses the point. An employee can behave carelessly, even criminally, and still be acting within the scope of her employment so long as she is furthering her employer's business in some way. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) ("the law now imposes liability where the employee's 'purpose, however misguided, is wholly or in part to further the master's business'") (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 70 at 505 (5th ed. 1984)).

Sanders has not alleged that the employees did anything other than talk to property management companies about their dealings with Sanders while he worked for PM One. There is nothing to suggest that they were acting for some purpose independent of their work for HUD. To the contrary, the allegations indicate that the HUD employees' conversations with the property management companies were part of their job. Finally, the fact the HUD officials' statements may have been false has no bearing on whether they acted outside the scope of employment. In sum, because

8

.Sanders has failed to identify any evidence that tends to contradict the Attorney General's certification, he has provided no basis for a viable claim against individual agency officers or employees.

**Conclusion**

For the reasons stated above, the Court grants the government's motion to dismiss [docket No. 18]. The Clerk is directed to enter judgment dismissing the case for lack of subject matter jurisdiction.

_____<br>
MATTHEW F. KENNELLY<br>
United States District Judge

Date: October 21, 2008